UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL WELDON,

Plaintiff,

v.

RUDY ANAYA,

Defendants.

No. 1:15-cv-00856-DAD-MJS

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

(Doc. No. 33)

Plaintiff Paul Weldon is proceeding *pro se* with this civil rights action against defendant City of Fresno police officer Rudy Anaya. Plaintiff's first amended complaint[1], the operative pleading in this action, was filed on November 20, 2015, and alleges the following causes of action: (1) an unlawful seizure in violation 42 U.S.C. § 1983; and (2) false arrest and false imprisonment. (Doc. No. 5.) On December 19, 2016, during the pretrial conference in this matter, the court determined that it was appropriate to reopen law and motion to allow for a motion for summary judgment to be filed. (Doc. No. 31.) Subsequently, on January 9, 2017, defendant Anaya moved for summary judgment under Federal Rule of Civil Procedure ("Rule") 56(a). (Doc. No. 33.) On February 6, 2017, plaintiff filed an opposition to the motion for

[1] Plaintiff's complaint is not verified in conformity with 28 U.S.C. § 1746, in that plaintiff did not declare under penalty of perjury that the contents thereof were true and correct. (*See* Doc. No. 5 at 5). Therefore, the complaint cannot function as an affidavit in opposition to summary judgment under Rule 56. *See* Fed. R. Civ. P. 56(e).

summary judgment and, on February 13, 2017, defendant filed a reply. (Doc. Nos. 35, 36, 37.) Plaintiff filed a second opposition to the pending motion two days before the hearing on February 21, 2017. (Doc. No. 39.)[2]

The matter came before the court for hearing on February 23, 2017. (Doc. No. 41.) Deputy City Attorney Erica Mercado Camarena appeared on behalf of defendant Anaya and plaintiff Weldon appeared telephonically in *pro se* on his own behalf. (*Id.*) For the reasons set forth below, defendant's motion for summary judgment will be granted.

## I. STATEMENT OF FACTS

Defendant Anaya has filed a statement of undisputed facts in support of his motion for summary judgment. (Doc. No. 33-2.) In addition, in support of his motion defendant has filed declarations by his counsel Deputy City Attorney Erica Camarena, Rose Miranda, Anthony DeWall, Tom Rowe, and himself. (Doc. Nos. 33-3, 33-4, 33-5, 33-6, 33-7.) Finally, defendant has lodged with the court, plaintiff Weldon's original deposition transcript and a video recording of that deposition. (Doc. No. 33-8.) Plaintiff, however, failed to comply with Local Rule 260(b) by not reproducing defendant's itemized facts set forth in defendant's statement of undisputed facts and admitting the facts that are undisputed and denying those that are disputed. Indeed, the only evidence plaintiff timely submitted in opposition to the pending motion as defendant Anaya's self-authenticating, signed oath of office form attached as exhibit "A1" to plaintiff's opposition to the motion for summary judgment.[3] (Doc. No. 36 at 17.)

Plaintiff also submitted an untimely declaration just two days before the hearing on the pending motion for summary judgment. (Doc. No. 40.) The declaration, however, does not comply with 28 U.S.C. § 1746, which requires that a declaration be subscribed as true under

---

[2] Plaintiff's second opposition and an accompanying declaration were untimely under Local Rule 230(c). Nevertheless, considering plaintiff's *pro se* status, the court will consider the untimely filing in ruling on the pending motion.

[3] Plaintiff also attached two other documents as exhibits to his opposition that were neither properly authenticated pursuant to Federal Rule of Evidence 901 nor self-authenticated pursuant to Federal Rule of Evidence 902—one is another document regarding defendant Anaya's oath of office and the other is a notice of a rejection of plaintiff's administrative claim by the City of Fresno on August 27, 2013. (*See* Doc. No. 36 at 16, 18.)

penalty of perjury, and be executed substantially in the statutory form, which requires a declarant to swear "under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746. Although a lack of swearing to the declaration may not be a fatal defect, the declaration must be made under penalty of perjury and must be attested to be true. *Cobell v. Norton*, 310 F.Supp.2d 77, 84 (D.D.C. 2004) (statement of truth based on "knowledge, information, and belief" are insufficient); *Kersting v. United States*, 865 F. Supp. 669, 676–77 (D. Haw. 1994) (necessary elements are that the unsworn declaration contains the phrase "under penalty of perjury" and states that the document is true). Here, plaintiff's declaration states only "I hereby declare that the foregoing is correct and true to the best of my knowledge, information and belief." (Doc. No. 40 at 3.) The declaration also fails to contain the phrase "under penalty of perjury" and therefore does not conform with 28 U.S.C. § 1746. Accordingly, the document submitted by plaintiff is not a sworn declaration in opposition to summary judgment under Rule 56. *See also Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991) (rejecting an affidavit because it was "not based on personal knowledge, but on information and belief"), aff'd, 508 U.S. 49 (1993). In any event, even if plaintiff's declaration was admissible, it would not create a genuine dispute as to any material fact.[4]

The evidence before the court on summary judgment establishes the following. On July 5, 2013, as part of the DUI enforcement campaign, the Fresno Police Department, Traffic Bureau established a DUI checkpoint at Wishon and Hedges Avenues in Fresno, California. (Doc. Nos. 33-2 at 4 and 33-6 at 2.) Sergeant Anthony DeWall was the supervisor tasked with overseeing the operation of the checkpoint. (*Id*.) The operation plan included numerous reflectorized stop signs, DUI checkpoint advisory signage, cones leading up to the checkpoint in order to control lanes, and numerous police patrol cars and motorcycles with lights activated. (Doc. Nos. 33-2 at 5 and 33-6 at 2.) Sergeant DeWall was also tasked with supervising defendant officer Anaya,

[4] In that declaration, plaintiff primarily makes legal arguments and states legal conclusions. He does submit one new fact, asserting that the vehicle stop to which he was subjected took twenty-five minutes, instead of the twenty-three minutes he alleges in his complaint. (*See* Doc. No. 40 at 2.) Otherwise, the facts set out in his declaration are consistent with the allegations and evidence already before the court.

who was assigned to monitor any vehicles that attempted to pull out of the DUI checkpoint line. (*Id*.)

At or about 10:00 p.m. on July 5, 2013, defendant officer Anaya observed plaintiff's van travelling southbound on Wishon Avenue near Hedges (a one-way street) headed towards the DUI checkpoint. (Doc. Nos. 33-2 at 5 and 33-5 at 2.) As the vehicle approached the coned area of the DUI checkpoint, defendant Anaya saw the van stop, reverse and move backwards against traffic, and turn into an apartment complex parking lot. (*Id*.) Because the van travelled in reverse on a one-way street and because it pulled out of the coned area of the DUI checkpoint, defendant Anaya concluded that he had reasonable suspicion justifying the initiation of a traffic stop based upon violations of Vehicle Code §§ 21657 and 2814.2. (*Id*.) Plaintiff has alleged he was travelling down Wishon Avenue when he received a call on his cell phone and, in the interest of safety, he pulled over to the side of the road to take the call and backed up into an apartment complex parking lot. (Doc. Nos. 5 at 2; 33-2 at 2; 33-3 at 16, 35.)[5] It is undisputed that plaintiff did not live at that apartment complex nor did he know anyone who resided there. (Doc. Nos. 33-2 at 2 and 33-3 at 18.)

Defendant officer Anaya initiated a traffic stop and parked his department-issued motorcycle in front of plaintiff's van, blocking its movement. Defendant Anaya, in uniform, approached plaintiff's van. (Doc. Nos. 33-2 at 2 and 33-3 at 21.) Defendant Anaya told plaintiff to place the van in park and asked him for his driver's license, and plaintiff complied. (Doc. Nos. 33-2 at 3 and 33-3 at 19, 23.) Defendant Anaya told plaintiff there was a DUI checkpoint just ahead on Wishon. (Doc. Nos. 33-2 at 3 and 33-3 at 25.) Defendant Anaya took plaintiff's driver's license and, according to plaintiff, officer Anaya then "did his thing, called in, made the check . . . on the radio." (Doc. Nos. 33-2 at 3 and 33-3 at 24, 27.) At or about 10:03 p.m., defendant Anaya ran a search of plaintiff's driver's license through the Police Department's

---

[5] Plaintiff includes a substantially similar explanation for why he drove in reverse and into the driveway in his defective declaration. (*See* Doc. No. 40 at 1.) Even if the declaration had been executed under penalty of perjury, it would make no difference to the resolution of the pending motion. Plaintiff's version of the vents does not undercut the basis of defendant Anaya's reasonable suspicion justifying the vehicle stop as discussed below.

Record Management System and confirmed it was valid. (Doc. Nos. 33-2 at 5 and 33-5 at 3.)

After observing that plaintiff appeared sober, defendant Anaya handed back plaintiff's driver's license and allowed him to leave without further incident and without citing him for any traffic violations. (*Id.*; Doc. Nos. 33-2 at 33-3 at 27.) According to plaintiff defendant Anaya: (1) did nothing to evaluate his sobriety (Doc. Nos. 33-2 at 33-3 at 26); did not ask plaintiff to step out of his vehicle (*Id.*); did not handcuff plaintiff, read him his *Miranda* rights, or tell plaintiff he was under arrest (Doc. Nos. 33-2 at 33-3 at 28); never touched plaintiff and did not pull his gun or Taser out (Doc. Nos. 33-2 at 33-3 at 29–30). Defendant Anaya estimated that it takes approximately five minutes to run a driver's license check on a subject. (Doc Nos. 33-2 at 6 and 33-5 at 3.) He estimated that plaintiff's detention may have been a little longer because it was the Fourth of July holiday weekend, but it would be unusual for it to have taken longer than fifteen minutes to run the check on plaintiff's driver's license. (*Id.*)[6]

At no time during the evening of July 5, 2013, was it ever brought to Sergeant DeWall's attention that plaintiff had made a complaint, expressed a concern, or leveled an allegation that he had been unlawfully arrested. (Doc. No. 33-2 at 5 and 33-6 at 3.) At no time that evening did Sergeant DeWall observe defendant Anaya do anything inappropriate or unbecoming of an officer. (*Id.*)

Plaintiff presented a claim for damages with respect to this incident to the City of Fresno on July 18, 2013. (Doc. Nos. 33-2 at 8 and 33-4 at 4–5.) On August 27, 2013, the City of Fresno served plaintiff with a notice of rejection of claim at his address as identified on the claim for damages which he had submitted. (Doc. Nos. 33-2 at 8 and 33-4 at 7–8.) The notice informed plaintiff that, subject to certain exceptions, he had only six months from the date of the notice to file a court action with respect to his claim. (*Id.*) The present action was filed in this court on June 8, 2015. (Doc. No. 1.)

---

[6] In his first amended complaint, plaintiff alleges the investigation following the stop of his vehicle took twenty-three minutes. (*See* Doc. No. 5 at 2.) As noted above, in his defective declaration plaintiff states that the stop took twenty-five minutes. (*See* Doc. No. 40 at 2.) In any event, even if the stop lasted twenty-five minutes before plaintiff was told he was free to go, under the facts of this case, the court would still find as a matter of law that no constitutional violation occurred.

## II.     LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III. ANALYSIS

### *A. Plaintiff's Constitutional Rights Were Not Violated.*

Summary judgment in defendant's favor as to plaintiff's first cause of action must be granted because, as explained below, the undisputed evidence on summary judgment establishes

that plaintiff was not unlawfully seized in violation of the Fourth Amendment.

The Civil Rights Act under which plaintiff's first cause of action was brought provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, in order to make out a valid claim under § 1983, a plaintiff must allege and eventually prove that: (1) the conduct complained of was committed by a person acting under color of state law; (2) this conduct deprived a person of constitutional rights; and (3) there is an actual connection or link between the actions of the defendants and the deprivation allegedly suffered by plaintiff. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–695 (1978); *Rizzo v. Goode*, 423 U.S. 362, 370–371 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Here, under the undisputed evidence before the court on summary judgment, it is clear that defendant Anaya never deprived plaintiff of any constitutional right.

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, protects against unreasonable searches and seizures by law enforcement officers. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The Fourth Amendment requires law enforcement officers to have at least a reasonable suspicion of criminal activity before making a brief investigatory stop ("*Terry* stop"). *See Terry v. Ohio*, 392 U.S. 1, 9 (1968); *United States v. Johnson*, 581 F.3d 994, 999 (9th Cir. 2009) ("Police may detain or seize an individual for brief, investigatory purposes, provided the officers making the stop have reasonable suspicion that criminal activity may be afoot.") (citation and internal quotation marks omitted). "While reasonable suspicion requires 'considerably less than proof of wrongdoing by a preponderance of the evidence,' an officer must be able to articulate facts creating grounds to suspect that criminal activity 'may be afoot.'" *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009) (quoting *United States v.*

*Sokolow*, 490 U.S. 1, 7 (1989)). "Reasonableness . . . is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). "In a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *see also Thomas v. Dillard*, 818 F.3d 864, 875 (9th Cir. 2016).

Here, the undisputed evidence on summary judgment establishes that the DUI checkpoint included numerous reflectorized stop signs, checkpoint advisory signage, cones leading up to the checkpoint to control traffic lanes, and numerous police patrol cars and motorcycles with emergency lights activated. The undisputed evidence further reflects that defendant officer Anaya saw plaintiff's van stop short of the checkpoint, put his vehicle into reverse, back up, and pull into the apartment complex parking lot. California Vehicle Code § 2814.2(a) provides:

> A driver of a motor vehicle shall stop and submit to a sobriety checkpoint inspection conducted by a law enforcement agency when signs and displays are posted requiring that stop.

Based upon the undisputed evidence before the court on summary judgment, defendant Anaya thus had a reasonable suspicion to believe plaintiff had violated § 2814.2 and the stop of plaintiff's vehicle on this ground was clearly justified.

Moreover, the evidence on summary judgment also demonstrates that defendant officer Anaya saw plaintiff's van stop and then travel backwards against traffic on a one-way street. California Vehicle Code § 21657 provides:

> The authorities in charge of any highway may designate any highway, roadway, part of a roadway, or specific lanes upon which vehicular traffic shall proceed in one direction at all or such times as shall be indicated by official traffic control devices. When a roadway has been so designated, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by traffic control devices.

Given this evidence, defendant officer Anaya thus also had a reasonable suspicion to believe

/////

/////

/////

plaintiff violated § 21657 and the vehicle stop was justified on that basis as well.[7]

Accordingly, defendant officer Anaya was justified in making a lawful investigatory stop to inquire into the vehicle code violations he had observed. The stop of plaintiff's vehicle was nothing more than a routine traffic stop. As the Supreme Court has explained, "[a] lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." *Arizona*, 555 U.S. at 333. The undisputed evidence on summary judgment is that after initiating the traffic stop defendant Anaya took plaintiff's driver's license and called in the information over his police radio so that a search of the Police Department's Record Management System could be performed. The undisputed evidence further establishes that after the records check was run on his license and defendant Anaya observed that plaintiff, in fact, appeared to be sober, Anaya handed back plaintiff his license and allowed him to leave the scene without further incident. There is no evidence before the court on summary judgment indicating that the stop of plaintiff's vehicle exceeded the time necessary to handle the matter for which the stop was made. *See Rodriguez v. United States*, ___U.S.___, ___, 135 S. Ct. 1609, 1615 (2015) (beyond determining whether to issue a traffic ticket, an officer's mission in a traffic stop includes ordinary inquiries incident to the stop, including checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance and he may not prolong the stop beyond the time necessary to carry out these tasks absent the reasonable suspicion necessary to justify detaining the individual); *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984) (a records check is an expected part of a traffic stop).

/////

---

[7] Plaintiff argues, in effect, that defendant Anaya did not have reasonable suspicion to effectuate a traffic stop because he did not issue plaintiff a ticket or a notice to appear for a traffic violation. (*See* Doc. No. 39 at 6.) However, the issuance of a ticket or notice to appear is by no means necessary for a finding of reasonable suspicion. As indicated by the court at the hearing, the mere fact that the officer exercised his discretion to show leniency to plaintiff by not issuing him a citation is certainly no reason to question that reasonable suspicion existed justifying the vehicle stop in the first instance.

Accordingly, here the evidence on summary judgment establishes that the vehicle stop on a busy Fourth of July weekend—whether of fifteen, twenty-three or twenty-five minutes in duration—was reasonable and no longer than necessary. Consequently, defendant Anaya's traffic stop of plaintiff did not violate the Fourth Amendment.[8] Therefore, summary judgment will be granted in favor of defendant with respect to this claim advanced by plaintiff.[9]

   *B. Plaintiff's State Law Claims Are Barred by the Applicable Statute of Limitations.*

Summary judgment must also be granted in favor of defendant with respect to plaintiff's second cause of action for false arrest and false imprisonment because, for the reasons explained below, those claims are barred by the applicable statute of limitations.

California Government Code § 911.2(a) provides:

> A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) not later than one year after the accrual of the cause of action.

Here, plaintiff timely presented an administrative claim for damages to the City of Fresno on July 18, 2013. (Doc. Nos. 33-2 at 8 and 33-4 at 4–5.) However, on August 27, 2013, the City of Fresno properly served plaintiff with a notice of rejection of claim at the address identified by plaintiff on his claim for damages. (Doc. Nos. 33-2 at 8 and 33-4 at 7–8.) The notice informed

---

[8] Plaintiff argues that defendant Anaya was impersonating a police officer and that his oath of office was defective. (*See* Doc. No. 36 at 6–10.) However, plaintiff has presented no evidence to support this allegation. Indeed, the oath of office document plaintiff has attached as an exhibit to his opposition to the pending motion indicates that defendant Anaya is a sworn officer. (Doc. No. 39 at 21.) Moreover, even if defendant Anaya's oath of office was in some way defective, as plaintiff claims, the *de facto* officer doctrine, "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995). Finally, the declarations of DeWall, Rowe, and defendant Anaya, submitted by defendant in support of the pending motion, all attest to the fact that defendant Anaya is a fully sworn peace office employed by the Fresno Police Department. (*See* Doc. Nos. 33-5 at 1; 33-6 at 2-3; 33-7 at 3–4.) There is no evidence indicating otherwise before the court on summary judgment.

[9] Since Weldon's constitutional rights were not violated, the court does not need to reach Anaya's arguments that he is entitled to good faith and qualified immunity.

plaintiff that, subject to certain exceptions, he only had six months from the date of the notice to file a court action with respect to his claim. (*Id*.) Nonetheless, plaintiff did not file the present civil action until almost two years later, on June 8, 2015. (Doc. No. 1.) Accordingly, plaintiff's state law claims for false arrest and false imprisonment are barred by governing the statute of limitations and summary judgment with respect to these claims must be granted in favor of defendant.

**IV. CONCLUSION**

For all of the reasons set forth above:

1) Defendant's motion for summary judgment (Doc. No. 33) is granted; and

2) The Clerk of the Court is directed to enter judgment in favor of defendant Rudy Anaya and to close this case.

IT IS SO ORDERED.

Dated: **April 5, 2017**

Dale A. Drozd

UNITED STATES DISTRICT JUDGE